**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DEBRA G. HOPKINS, et al.,      )
      )
      Plaintiffs,      )
      )
v.      )      Case No. 15-cv-2072-CM-TJJ
      )
BOARD OF COUNTY COMMISSIONERS      )
OF WILSON COUNTY, KANSAS, et al.,      )
      )
      Defendants.      )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No.

183). Plaintiffs request that the Court enter an order compelling Third-Party Defendant

Advanced Correctional Healthcare ("ACH") to properly answer Plaintiffs' First Interrogatories

and produce documents responsive to Plaintiffs' First Requests for Production. As explained

below, the motion is granted in part and denied in part.

## I.     BACKGROUND RELEVANT TO THE DISCOVERY MOTION

Plaintiffs served their First Interrogatories (numbered 1–15) and First Requests for

Production of Documents (numbered 1–21) to "defendant" ACH via email on January 31, 2018.[1]

On February 19, 2018, ACH's counsel emailed Plaintiffs' counsel stating that ACH was not a

defendant in the case, but instead a third-party defendant. ACH's counsel requested correction of

the discovery requests served upon "defendant" ACH, and stated ACH would serve its objections

---

[1] *See* Certificate of Service, ECF No. 158.

and answers within thirty days of receipt of the corrected discovery requests.[2] Plaintiffs' counsel replied "understood," however, the discovery requests were never re-served.[3]

ACH served its answers and objections to Plaintiffs' interrogatories and requests for production on March 2, 2018.[4] Plaintiffs' counsel sent Golden Rule letters regarding ACH's objections, responses, and answers to Plaintiffs' discovery requests on March 8 and 9, 2018.[5] A telephone conference was set up for March 15, 2018.

Shortly before the March 15 telephone conference, ACH served supplemental answers and responses to Plaintiffs' interrogatories and requests for production.[6] Counsel for Plaintiffs and ACH then conferred by telephone, resolved some of their disputes, and ACH agreed to further supplement some of its interrogatory answers.

In a letter dated March 23, 2018, Plaintiffs' counsel requested that ACH provide a written response to Plaintiffs' Golden Rule letters. On March 27, 2018, ACH served its second supplemental answers and responses to Plaintiffs' interrogatories and requests for production.[7] Counsel conferred again by telephone on April 3, 2018 and reached an agreement limiting the scope of some of the interrogatories and requests for production.

---

[2] Feb. 19, 2018 email, ECF No. 192-3.

[3] This was apparently due to a misunderstanding in which ACH's counsel believed that Plaintiffs' counsel, by replying "understood" to her email, agreed to re-serve the discovery requests and that ACH's responses would be due 30 days thereafter.

[4] *See* ACH's Certificate of Service, ECF No. 168.

[5] See Pls.' letters, ECF No. 183-1 at 52–63.

[6] *See* ACH's Certificates of Service, ECF Nos. 172 & 173.

[7] *See* ACH's Certificate of Service, ECF No. 175.

On April 30, 2018, ACH served its <u>third</u> supplemental answers and responses to Plaintiffs' interrogatories and requests for production.[8] ACH also provided a privilege log for documents withheld as responsive to Requests 3, 5, 20, and 21.[9]

Plaintiffs filed the instant Motion to Compel Discovery on May 2, 2018.

On May 14, 2018, ACH served its <u>fourth</u> supplemental answers and responses to Plaintiffs' interrogatories and requests for production.[10] ACH also provided a revised privilege log for documents it withheld as responsive to Requests 3, 4, 20, and 21, and Interrogatory 7.[11] ACH filed its response in opposition to Plaintiffs' motion to compel on May 16, 2018.

## II. OBJECTIONS ASSERTED IN ACH'S SUPPLEMENTAL DISCOVERY RESPONSES

Plaintiffs request the Court overrule as untimely all the objections ACH asserted in its *supplemental* discovery answers and responses. They argue that ACH's original answers and responses consisted almost entirely of boilerplate objections, such as "overbroad," "unduly burdensome," or asserting work product or attorney-client privilege. According to Plaintiffs, it was only after Plaintiffs notified ACH of the claimed deficiencies in ACH's original discovery answers and responses, that ACH served supplemental answers or responses expanding its objections significantly. Plaintiffs contend ACH waived all objections asserted for the first time in ACH's supplemental answers and responses, and not asserted in ACH's original answers and responses served on March 2, 2018.

---

[8] *See* ACH's Certificate of Service, ECF No. 182.

[9] ECF No. 183-2.

[10] *See* ACH's Certificate of Service, ECF No. 188.

[11] ECF No. 192-23 at 12–16.

ACH urges the Court to apply the proportionality considerations of Fed. R. Civ. P. 26(b). It repeatedly emphasizes that Plaintiffs served substantial, overwhelming, and voluminous discovery requests upon it, despite having no pending claim in this case against ACH. All of Plaintiffs' claims against ACH have been dismissed by the Court, and ACH remains in the case merely as a third-party defendant brought in by the Wilson County Defendants on a contractual indemnity claim.

ACH's current status in this case—as a third-party defendant on claims asserted by the Wilson County Defendants—does not preclude it from being required to respond to discovery requests served by Plaintiffs. Although all of Plaintiffs' claims asserted against ACH and its employees have been dismissed, ACH remains a party in the case and it has an obligation to respond to discovery requests served upon it.[12] The number of interrogatories and requests for production Plaintiffs served upon ACH are not disproportionate given ACH's involvement and knowledge of the care and treatment of Naomi Keith at issue in this case.

ACH also argues that while many of Plaintiffs' discovery requests are patently objectionable on their face, it has, in the spirit of cooperation, supplemented the objections it initially and timely asserted. ACH contends these supplemented responses and objections merely provide further specific details about the discovery requests to which it had already objected.

Federal Rule of Civil Procedure 33(b)(2) sets a 30-day time period for answering or objecting to an interrogatory, unless the parties stipulate to or the court orders a shorter or longer

---

[12] *See Westport Ins. Corp. v. Guideone Mut. Ins. Co.*, No. 15-2001-CM-KGG, 2016 WL 6948058, at *2 (D. Kan. Nov. 28, 2016) (granting motion to compel and ordering third-party defendants to provide discovery responses).

time period.[13]  If objecting to an interrogatory, Rule 33(b)(4) provides that "[t]he grounds for objecting . . . must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

Rule 34(b)(2)(A) likewise requires a party to whom a request for production or inspection is directed to "respond in writing within 30 days after being served," or, for early discovery requests, 30 days after the parties' first Rule 26(f) conference.  Rule 34(b)(2)(B) also provides that "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." In lieu of permitting inspection, the responding party may state that it will produce copies of documents or of ESI.[14] "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."[15] Finally, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."[16]

"When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion."[17] Objections that a responding party fails to initially raise in the answer or response to the discovery request are

---

[13] Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answer and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.").

[14] Fed. R. Civ. P. 34(b)(2)(B).

[15] *Id.*

[16] Fed. R. Civ. P. 34(b)(2)(C).

[17] *Contracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

deemed waived.[18]  Objections that are initially raised—but not reasserted and relied upon in response to a motion to compel discovery—will be deemed abandoned.[19]  An objecting party's failure to provide evidence and affidavits in support of discovery objections at the time initial discovery responses are served does not waive the objections.[20]

Any objections ACH failed to assert within its time period for answering the interrogatories or responding to the requests for production are deemed waived.  Under Rules 33(b)(2) and 34(b)(2)(A), ACH was required to assert any objections within 30 days of the date Plaintiffs served their interrogatories and requests for production, which were served on January 31, 2018.  However, in this case, ACH's counsel reasonably understood Plaintiffs' counsel as agreeing to re-serve the discovery requests upon ACH and to extend ACH's deadline for responding to thirty days after re-serving them.  It likely would not have been until ACH's counsel received Plaintiffs' Golden Rule letters on March 8 and 9, 2018, that they realized Plaintiffs' counsel did not intend to re-serve the discovery requests.  The Court therefore construes March 8 as the date Plaintiffs' discovery requests were re-served on ACH. Based upon ACH's understanding of the parties' agreement, ACH's discovery responses would have been due 30 days later, on April 7, 2018. ACH's March 2 original, March 15 supplemental, and March 27 second supplemental answers and responses were all served prior to the April 7, 2018 deadline. The Court finds ACH's original, supplemental, and second supplemental answers and responses were therefore timely served.

---

[18] *Id.*

[19] *Id.*

[20] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1257 (D. Kan. 2008).

Plaintiffs argue that ACH's discovery answers and responses changed significantly between its March 2 original and its later multiple supplemental ones, and ACH should not be permitted, once its original objections are challenged, to raise other objections. The correspondence between counsel, however, reveals that ACH's supplementations were in large part the result of conferring efforts between counsel. ACH's supplemental answers and responses provide, at Plaintiffs' request, more details and explanation for the basis for ACH's original boilerplate objections to the discovery requests. Furthermore, ACH served at least its first and second supplementations within what ACH believed was the agreed time period for responding to all the interrogatories and requests for production at issue.

The Court has reviewed ACH's original, supplemental, and second supplemental discovery answers and responses to all the interrogatories and requests at issue in Plaintiffs' motion. Based upon that review, the Court finds ACH's supplemental responses reassert and expand upon objections asserted in timely served discovery answers and responses, thus all objections ACH has reasserted and relied upon in response to Plaintiffs' motion to compel are timely.

## III. INTERROGATORY LIMIT OBJECTIONS

ACH objected to each of Plaintiffs' Interrogatories 4 through 15 as exceeding the allowable interrogatory limit in Fed. R. Civ. P. 33(a). Rule 33(a) limits the number of written interrogatories, including all discrete subparts, to no more than 25 interrogatories unless otherwise stipulated or ordered by the court. In this case, the parties requested and the original Scheduling Order (ECF No. 17) allows the parties to serve a maximum of 30 interrogatories.

Plaintiffs' First Interrogatories to ACH are comprised of fifteen numbered interrogatories, however, two of the interrogatories are drafted in such a way that they clearly

have discrete subparts.  Specifically, the Court finds Interrogatory 3 is comprised of nine subparts[21] and Interrogatory 4 is comprised of six subparts[22] that are discrete and count separately for purposes of the interrogatory limit.  However, because Plaintiffs only served fifteen interrogatories, the additional subparts in Interrogatories 3 and 4 do not cause the total to exceed the 30-interrogatory maximum.  ACH's objections that it should not be required to answer Interrogatories 4 through 15 because they exceed the allowable interrogatory limit are overruled.  To any extent ACH has not fully answered Plaintiffs' Interrogatories 4 through 15 based solely upon its interrogatory-limit objections, it shall serve supplemental answers to those interrogatories within ten (10) days of this Order.

---

[21] Plaintiffs' Interrogatory 3 asks ACH:

If it is your contention that the death of Naomi Keith was caused in whole or in part by the acts or omissions of any other company or person (including Plaintiff), for each such person, [1] please identify their name, present address, occupation, title, and professional relationship to you; [2] provide the name, address, occupation and title or any persons who may testify at the trial of this matter, having any knowledge in support of your contention; [3] provide a summary of all facts in support of your contentions; [4] state how or in what manner such other persons caused or contributed to Ms. Keith's death; [5] identify each page in Ms. Keith's medical record which you contend evidences any act or omission supporting your contention; [6] identify any standard, duty, omission, rule, regulation, policy, procedure, guideline, or governing principal which you believe any person or company failed to act in accordance with; [7] describe why you believe they were at fault in Ms. Keith's death; [8] identify what steps or actions the person or company should have taken to prevent each error, omission, or breach of duty leading to Ms. Keith's death; and [9] identify each document by title, date, and a brief description which you contend lends support to your contention.

[22] Plaintiffs' Interrogatory 4 asks:

If it is your contention that Ms. Keith's death was due to some cause or unforeseeable event, natural or otherwise, please [1] provide a summary of all facts in support of your contention; [2] identify the name, present address, occupation, and title of all persons who may testify at trial, who have any knowledge in support of your contention; [3] how or in what manner such event or condition caused or contributed to Ms. Keith's death; [4] identify in each page in Ms. Keith's medical records which you contend evidences such cause or event; [5] identify each document by title, date, and brief description which you contend tends to support your contention; and [6] identify any literature which you believe supports your contention.

# IV.     TIMELINESS AND SUFFICIENCY OF ACH'S PRIVILEGE LOGS

Plaintiffs argue that ACH's claims of attorney-client privilege and work product should be waived because ACH did not timely provide a privilege log for the responsive documents it was withholding, and the privilege logs eventually provided are insufficient because they do not contain all the required information to establish each element of the privilege or protection being asserted. Plaintiffs further point out that ACH has not offered any explanation why it waited so long to provide a privilege log.

ACH responds that Plaintiffs' counsel requested a privilege log on April 3, 2018 and, pursuant to their agreement, ACH produced a privilege log on April 30, 2018, and later a supplemental privilege log. ACH maintains that the privilege log and supplemental privilege log it produced describe in detail the documents or information to be protected and are in full compliance with Rule 26(b)(5). ACH also points out that the Wilson County Defendants provided discovery responses similar to ACH's without producing privilege logs, yet Plaintiffs have not pursued a motion to compel against those defendants.

## A.     Timeliness

Federal Rule of Civil Procedure 26(b)(5)(A) provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications . . . not produced or disclosed . . . in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim.

The party who withholds discovery materials under a claim of privilege or work product must provide sufficient information, usually in the form of a privilege log, to enable the party

seeking the discovery to evaluate the applicability of the privilege or protection.[23] "Failure to follow the Federal Rules of Civil Procedure may result in waiver of the attorney-client privilege and/or work-product protection."[24] If a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.[25]

Under Rule 26(b)(5)(A), a party must expressly make the claim of privilege or protection at the time it "withholds" the discoverable information. Thus, the date a party is deemed to "withhold" discoverable material is the date when the party's responses to the discovery requests are due.[26]

In this case, ACH asserted attorney-client privilege and/or work product in its original March 2, 2018 answers to Interrogatories 4, 5, 7, 14, and 15,[27] and responses to Requests for Production 3–5, 16, 17, 20, and 21.[28] Almost sixty days after it served its original discovery answers and responses, ACH provided a three-page privilege log on April 30, 2018 for

---

[23] *H & L Assocs. of Kan. City, LLC v. Midwestern Indem. Co.*, No. 12-2713-EFM-DJW, 2013 WL 5774844, at *5 (D. Kan. Oct. 25, 2013) (citing *White*, 586 F. Supp. 2d at 1266). *See also Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998) ("In the absence of good cause to excuse a failure to timely object, all objections not timely asserted are waived.").

[24] *H & L Assocs.*, 2013 WL 5774844, at *5

[25] *Id.* (citing *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009)).

[26] *United States v. Malik*, No. 15-CV-9092-CM-TJJ, 2017 WL 3923210, at *6 (D. Kan. Sept. 7, 2017).

[27] *See* ACH's original answers, ECF No. 183-1 at 39–41, 44–45. ACH later withdrew its attorney-client privilege and work product objections to Interrogatories 4, 5, 14, and 15 in its fourth supplemental answers, ECF No. 192-24 at 3–5, 10–13.

[28] *See* ACH's original responses, ECF No. 183-1 at 30, 33–34. ACH later withdrew its work product objections to Requests 16 and 17 in its third supplemental responses, ECF No. 183-1 at 144.

documents it was withholding as responsive to Plaintiffs' Requests 3, 5, 20, and 21. On May 14, 2018, after Plaintiffs filed their motion to compel, ACH provided a five-page revised privilege log for Requests 3, 4, 20, 21, and Interrogatory 7.

Due to the confusion when ACH's discovery responses were actually due, the Court declines to find ACH waived its claims of attorney-client privilege and work product by its failure to serve its privilege log when its discovery responses were due. As noted above, ACH likely realized on March 8, 2018 that Plaintiffs' counsel was not planning to re-serve the discovery requests. Construing March 8 as the date Plaintiffs' discovery requests were presumptively re-served on ACH, then ACH's discovery responses would have been due 30 days later, or on April 9, 2018. ACH provided its initial privilege log on April 30, 2018, after its counsel spoke with Plaintiffs' counsel on April 3, 2018. ACH provided a revised privilege log two week later on May 14, 2018, after Plaintiffs raised issues with the sufficiency of ACH's original privilege log.

As recognized by courts in this District, waiver of privilege is a harsh sanction and should be reserved as a penalty where the offending party committed unjustified delay in responding.[29] The Court finds ACH's relatively short delay in providing a privilege log was not unjustified and does not warrant the harsh sanction of waiver.

---

[29] *See White*, 586 F. Supp. 2d at 1266 ("Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.").

**B.     Sufficiency**

Plaintiffs also argue that the privilege logs ACH produced are insufficient because they do not contain all the required information to establish each element of the privilege or protection being asserted.

The level of detail required in a privilege log is determined on a case-by-case basis, but courts in the District of Kansas have stated that a privilege log generally should contain the following:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.[30]

At the very least, a privilege log should contain sufficient information so that the opposing party and the court can evaluate the claimed privilege.[31] If a party fails to carry its burden of establishing that any documents withheld are subject to privilege, the court may conclude that the privilege is waived.[32]

A review of ACH's original privilege log produced on April 30, 2018 reveals that the log only contains general descriptions of categories of documents being withheld, e.g., "[s]ummaries of interviews with ACH or ACH employees prepared by undersigned counsel or undersigned counsel's employees." However, all document categories include statements that the documents were "prepared by" ACH's counsel or were communications between ACH's counsel and others, such as ACH's employees or experts. The log contains no information regarding the number of documents being withheld, the identities of the author or recipients, the date the documents were prepared or sent, the number of pages, or the purpose of preparing the documents. The Court concludes that ACH's original privilege log lacks sufficient information to evaluate the claimed privileges for the documents withheld.

ACH's revised privilege log for documents responsive to Request 3, 4, 20, and 21 and Interrogatory 7 provides more information than its original privilege log, including more descriptive summaries of the documents withheld with the identities who prepared or received the document, the date(s) the documents were prepared, and purpose for preparing the document.

---

[30] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4–5 (D. Kan. Mar. 24, 2017).

[31] *Id.* at *5.

[32] *Id.*

The Court concludes that ACH's revised privilege log for withheld documents responsive to Request 3, 4, 20, and 21 and Interrogatory 7 contains sufficient information to assess the privilege. ACH has asserted that all documents it withheld were prepared by ACH's counsel or counsel's employees, contain the mental impressions of counsel developed for or prepared for purposes of litigation or trial, or were communications exchanged between counsel and client (or the client's employees) and relate to giving legal advice. The revised privilege log is sufficient and ACH has not waived its attorney-client privilege or work product protections asserted in response to Requests 3, 4, 20, 21 and Interrogatory 7.[33]

## V.    INTERROGATORIES AT ISSUE

Plaintiffs also request an order compelling ACH to answer specific interrogatories. Having overruled ACH's objections that Plaintiffs' interrogatories exceed the maximum number allowed, the Court will address ACH's remaining objections it reasserted to Interrogatories 3, 4, 9, 11, and 13.

### A.    Interrogatories 3 and 4 (Information supporting cause of death contentions)

Plaintiffs' Interrogatory 3 asks ACH for several subsets of information based upon its contention that "the death of Naomi Keith was caused in whole or in part by the acts or omissions of any other company or person (including Plaintiff)."[34] Interrogatory 4 asks ACH for information (a summary of facts, identification of persons with knowledge or may testify at trial,

---

[33] ACH listed categories of documents as responsive to Request 5 in its original privilege log, but not in its *revised* privilege log. ACH states in its second supplemental response to Request 5 that its "[o]bjections to privilege documents are withdrawn." ECF No. 192-23 at 3.

[34] *See supra* note 21.

identification of medical records, documents, and literature supporting contentions) if Ms. Keith's death was "due to some cause or unforeseeable event, natural or otherwise."[35]

In its initial answers, ACH objected that the interrogatories were "overbroad, unduly burdensome, seek work product and attorney-client privileged information." In its second supplemental answer to Interrogatory 3, ACH answered: "None at this time." In its third supplemental answer to Interrogatory 4, ACH answered: "As ACH discovers information responsive to this interrogatory, ACH will supplement."

ACH states that it has already withdrawn its objections to these interrogatories and has supplemented them.  The Court finds ACH has no current outstanding objections to Interrogatories 3 and 4. If ACH still has not supplemented its answer to Interrogatory 4, it shall do so **within ten (10) days of this Order**.

### B.    Interrogatory 9 (Identity of ACH employees working at Wilson County Jail)

Plaintiffs' Interrogatory 9 requests ACH:

identify all ACH employees who worked at or supervised ACH workers working at the Wilson County Jail from 2008 to present. For each person, please provide their dates of employment, starting and ending wages, professional qualifications, and contact info including address, phone number, and email address.

In its original answer, ACH objected to the interrogatory as seeking irrelevant and confidential information.  In its supplemental answer, ACH again objected on the basis of relevance and confidential information. It further supplemented that:

Said interrogatory is irrelevant because it seeks information about employees of ACH that were not involved in the care and treatment of Naomi Keith. It seeks information from date of death of decedent, to the present, which is completely irrelevant. . . . It further seeks information about a period of almost 10 years. The interrogatory seeks confidential information as well, because it seeks information about private employees, and former employees that had no involvement in the care and treatment of Naomi Keith. The information requested seeks personal

---

[35] *See supra* note 22.

information, such as wage history and professional qualifications, as well as address, phone number, and e-mail addresses. Such information would serve to breach each individual's privacy, including the privacy of any employee that no longer works for ACH, and the welfare of ACH's corporate existence and the employment security of its employees, if said documents were released.

ACH's second supplemental answer is the same as the prior one except that it added:

Subject to said objections, employees that worked for ACH from 2010-2013 are Gary McIntosh, PA (07/24/09-08/30/17), last known address-636 East 690th Ave., Arcadia, KS 66711, Brenda Morgan, LPN (07/31/13-active), Amber Roberts, LPN (09/27/13-active), Melanie Stroda, NP (10/21/13-active).

Plaintiffs argue in their motion to compel that the information provided by ACH is not entirely responsive because it fails to include the starting and ending wages, professional qualifications, or contact information for employees.

ACH contends it has answered Interrogatory 9 by providing names and dates of employment for employees who worked for ACH for the three-year time period 2010–2013, which includes the year of the alleged deliberate indifference in this case. It has also provided the professional qualifications of each employee, as well as the last known address for any employees who no longer work with ACH. It asserts that active ACH employees can be contacted through its counsel.

The Court sustains ACH's relevance objection to Interrogatory 9 to the extent it seeks information beyond the 2010–2013 time period and each employee's starting and ending wage information. Plaintiffs have not shown the relevance of this information. However, ACH's objections are otherwise improper conditional objections.[36] For example, given the objections, it is unclear whether the current answer lists all employees of ACH or only those involved with Naomi Keith. ACH shall answer Interrogatory 9, striking the paragraph of objections except the

---

[36] *See Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *2–3 (D. Kan. Feb. 11, 2014).

time frame and wage relevance objections, and providing all known contact information for Gary McIntosh, as well as the qualifications of all employees of ACH (regardless of whether involved in the case and treatment of Naomi Keith) from 2010 to 2013 and not merely their PA, LPN, or NP licensures. ACH need not provide the contact information for current employees as they can be contacted through ACH's counsel. Plaintiffs' motion to compel with respect to Interrogatory 9 is granted in part.

### C.     Interrogatory 11 (Other lawsuits)

Interrogatory 11 asks ACH "[i]f you have ever been a party to a lawsuit as Plaintiff or Defendant or testified in any proceeding while under oath, please provide the county and state where the lawsuit was filed; the year the lawsuit was filed; the case caption; the court and case number; and the disposition of the lawsuit."

In its original answer, ACH asserted a relevance objection and that the interrogatory seeks confidential information. In its supplemental answer, ACH reasserted these objections and further supplemented the interrogatory "is irrelevant and overbroad because it is requesting information for an unlimited time and it does not delineate as to type of lawsuits, [and] . . . is irrelevant to the allegations in this lawsuit." In its second supplemental answer to Interrogatory 11, ACH repeated its supplemental answer and added: "Subject to said objections, per agreed to limitation, 2010-2013 are produced pursuant to Protective Order, as Exhibit K."

ACH states in its response that it has answered Interrogatory 11 by providing Plaintiffs with a list of all lawsuits filed against it from 2010–2013. The Court sustains ACH's relevance objection to Interrogatory 11 based upon the lack of any reasonable time limits.  Plaintiffs do not argue that a different time period should be applied, nor do they make any argument why the

2010–2013 lawsuit information provided by ACH is insufficient. Plaintiffs' motion to compel

with respect to Interrogatory 11 is therefore denied.

### D. Interrogatory 13 (Cost information)

Interrogatory 13 asks ACH to identify "the annual total and per prisoner per day costs for

you to provide health care at the Wilson County Jail from 2000 – 2017." In its third supplemental

answer, ACH responded:

> An agreement was reached by counsel in which ACH would provide an answer to
> this question for the time period of 2010-2013, but only if the answer was easily
> obtainable. However, after checking with ACH to attempt to locate this
> information, it was determined that such information is NOT in this fashion by
> ACH, is not currently available to ACH in any database, and cannot be gathered
> or calculated with any degree of accuracy. Even attempting to formulate or
> calculate this information would take days of effort, with no guarantee that the
> ultimate conclusions would be accurate.

ACH states in its response that "documentation or information related to 'prisoner per

day' costs is not maintained. . . . The jail facility maintains prisoner census data which varies

wildly by quarter, and is not calculated by ACH. Further Plaintiffs already have the information

on the total cost of the contract to Wilson County." The Court finds that ACH has sufficiently

explained why it is unable to answer Interrogatory 13. Plaintiffs' motion to compel with respect

to Interrogatory 13 is denied.

## VI. REQUESTS FOR PRODUCTION AT ISSUE

Plaintiffs also request an order compelling ACH to produce documents responsive to

specific requests for production.

### A. Request 5 (Prior complaints and investigations)

Plaintiffs' Request 5 asks ACH to produce "all prior complaints, suggestions, accusations

or investigations regarding [ACH's] treatment or care of persons in custody at the Wilson

County Jail."

ACH objected to Request 5 as overboard, unduly burdensome, vague, irrelevant, and seeking attorney-client privileged and peer review information.[37] ACH argues Request 5 is overbroad and unduly burdensome because it does not list the time frame for such requests, seeks potentially numerous documents that may not be created, and/or that would require an extensive search for thousands and thousands of records listing every accusation by every inmate ever housed in the Wilson County Jail. ACH argues the documentation requested would go back over ten years and during this time frame, employees of ACH have encountered thousands of inmates; many of whom have a renowned propensity for filing numerous sick requests, grievances, and similar other filings. Further, ACH argues the request is not specific to the treatment at issue in this matter, or the specific medical conditions or care at issue. ACH makes a series of vagueness and relevance arguments. Further, ACH complains about the scope of the request given that it is not a defendant in this lawsuit and is not being sued by Plaintiffs.

Plaintiffs argue that the parties agreed to limit this Request to years 2010 to 2013 with Plaintiffs reserving the right to seek additional years at a later time. Plaintiffs also argue that the documents sought by Request 5 are relevant because they may show patterns of poor medical care, prior complaints that prescriptions were not being properly administered, and instances where inmates were hospitalized for alcohol withdrawal.

The Court sustains ACH's overbroad, unduly burdensome, and vague objections to Request 5. The Court finds the lack of any time period makes Request 5 overly broad on its face, and will limit it to the 2010–2013 time period agreed by the parties. The Court further finds the terms "suggestions" and "accusations" are too vague so that ACH need not attempt to determine what documents would constitute a suggestion or accusation. ACH shall produce all documents

---

[37] ACH has withdrawn its privilege objections.

responsive to Request 5, but limited to complaints and investigations regarding ACH's treatment or care of persons at the Wilson County Jail for the years 2010 to 2013.

## B.    Request 6 (Scheduled visits)

Plaintiffs' Request 6 seeks production of "all documents referencing the schedule of visits for ACH employees, or contractors to the Wilson County jail. This request specifically contemplates, but is not limited to documents referencing the supervisors scheduled during such visits."

ACH initially objected that Request 6 was overly broad and vague as to "schedule of visits" and time. ACH argues that the Request is not limited to the time of the alleged deliberate indifference, or to ACH employees who were, or could have, been involved in the medical care and treatment of decedent. The only employees of ACH who were working at the Wilson County Jail at the time of decedent's incarceration (September 2013) were Heather Decker and Gary McIntosh. Any other schedule of visits for any other ACH employee is irrelevant and not proportional. ACH also argues the term "schedule of visits" does not have any definitive meaning and does not specifically outline what information Plaintiffs seek. ACH produced a schedule of visits of employees who worked at Wilson County Jail from August 2013 through October 2013.

The Court sustains ACH's vague and overly broad objections to Request 6. The Request is overly broad in that it lacks any time limitations whatsoever. With respect to the information produced by ACH, Plaintiffs do not argue that ACH's production of the August through October 2013 schedule of employee visits is deficient or otherwise raise any issue with the time period of the information ACH provided on its employees. ACH, however, did not assert any objection to Request 6 based upon it seeking information on contractors and only produced a schedule of

visits of *employees* who worked at Wilson County Jail.  ACH shall serve a supplemental response to Request 6 indicating whether it had any *contractors* working at Wilson County Jail during the August through October 2013 time period and, if so, a schedule of the contractors visits.  Plaintiffs' motion to compel ACH to produce documents responsive to Request 6 is granted in part.

### C.    Request 8 (Employment files)

Plaintiffs' Request 8 asks ACH to produce:

> the complete employment file for all ACH employees or contractors who worked at or were assigned to the Wilson County Jail from 2005 to present. This request specifically contemplates, but is not limited to supervisors of those employees or contractors who were assigned to the Wilson County Jail from 2005 to present.

ACH originally objected that the Request was overbroad, unduly burdensome, and sought irrelevant and confidential employee information. ACH stated in its second supplemental response that it agreed to produce redacted personnel files for employees that were involved in the care and treatment of the decedent, Naomi Keith, on September 2, 2013–September 3, 2013. ACH produced the redacted personnel files of Heather Decker and Gary McIntosh.

Plaintiffs argue that Request 8 seeks relevant information, but do not argue that ACH's proposed limitation on the scope of the Request—to the redacted personnel files of ACH employees involved in the care and treatment of the decedent—is unreasonable or too narrow, or that ACH's redactions of the personnel files are improper.  The Court sustains ACH's overbroad, unduly burdensome, and relevance objections to Request 8 and limits it to the personnel files of the ACH employees involved in the care and treatment of the decedent in this case on September 2 and 3, 2013.  Plaintiffs' motion to compel ACH to produce documents responsive to Request 8 is denied.

**D.      Requests 11 and 12 (Correspondence with Wilson County)**

Plaintiffs' Request 11 seeks "copies of all correspondence between [ACH] and Wilson County between 2005 and present that discusses or references ACH's medical treatment of persons at the Wilson county jail."  Request 12 seeks "copies of all correspondence between [ACH] and Wilson County between 2005 and present that discusses or references ACH's medical treatment of persons at other jails in Kansas."

ACH objected to the Requests as "vague, overboard, unduly burdensome, irrelevant and violates HIPAA." In its supplemental responses, ACH reasserted the objections, adding that the requests seek every correspondence ever exchanged between ACH and Wilson County for a period of 13 years, beginning 8 years before the allegations in this lawsuit through 4 years after. ACH also argues that the Requests are not limited to the allegations in this lawsuit and do not delineate a specific type of medical treatment, and certainly not medical treatment similar to that provided to Ms. Keith.

Plaintiffs argue Requests 11 and 12 are relevant on their face because responsive documents would show whether Wilson County had ever complained about medical care provided by ACH at the Wilson County jail or other jails in Kansas. Plaintiffs argue this would further reflect on Wilson County's decision to contract with and/or retain ACH as its medical provider.

The Court sustains ACH's vague, overbroad, unduly burdensome, and relevance objections to Requests 11 and 12. The Requests are overly broad in that they seek correspondence covering a 13-year time period.  Request 12 is particularly overly broad because it is not limited to the Wilson County jail, but seeks correspondence between ACH and Wilson County that discusses or references ACH's medical treatment of persons "at other jails in Kansas."  The Court will limit Request 11 to correspondence between ACH and Wilson County

22

between 2010 and 2013 that discusses or references ACH's medical treatment of persons at the Wilson county jail. The Court will limit Request 12 to correspondence between ACH and Wilson County between 2010 and 2013 that discusses or references ACH's medical treatment of persons at other jails in Kansas. ACH shall produce all non-privileged documents, redacted as appropriate, responsive to Requests 11 and 12 as limited above.

### E. Request 18 (Staff training materials)

Plaintiffs' Request 18 asks ACH to produce "copies of all documents describing, referencing, or referring to ACH staff's medical training, ACH staff's ability to determine need for treatment of prisoners, and ACH staff's ability to observe, diagnose, or treat prisoners with medical needs/conditions. This request specifically contemplates, but is not limited to information regarding staff training to observe, diagnose, or treat delirium tremens or ethanol withdrawal."

ACH states in its response that it has produced, without objection, documents responsive to Request 18. Plaintiffs do not indicate how ACH's production is deficient. Plaintiffs' motion to compel ACH to produce documents responsive to Request 18 is denied.

### F. Requests 20 and 21 (Correspondence)

Plaintiffs' Request 20 seeks "all correspondence between you and Wilson County, including correspondence between your attorneys, agents, or representatives, and Wilson County's attorneys, agents, or representatives." Request 21 seeks the same correspondence but with the City of Fredonia.

ACH objected to both Requests as seeking privileged attorney-client communications, and violating insurer/insured privilege. ACH also objected the Requests were irrelevant and

work product. Its second supplemental responses reference its "revised privilege log for work-produce involving this case only."

Plaintiffs acknowledge in their motion that "some of the information could possibly be subject to privilege claims," but still seek a ruling with respect to ACH's relevance objection. The Court sustains in full ACH's privilege and irrelevance objections to Requests 20 and 21. These Requests, on their face, request production of privileged attorney-client communications and work product. Moreover, the lack of any temporal or subject matter limitations on the correspondence to be produced would require the production of significant amount of irrelevant correspondence. Finally, as discussed above, ACH has provided privilege logs that support its claims of attorney-client privilege and work product. The Court will limit Requests 20 and 21 to non-privileged correspondence between ACH and Wilson County and/or the City of Fredonia that discusses the events occurring on September 2, and 3, 2013 involving Naomi Keith. ACH shall produce documents responsive to Requests 20 and 21, but limited to non-privileged correspondence between ACH and Wilson County and/or the City of Fredonia that discusses the events occurring on September 2, and 3, 2013 involving Naomi Keith.

## VII.    REQUEST FOR SANCTIONS AND FEES

Plaintiffs also request the Court order ACH to pay the attorney's fees associated with this motion and impose additional sanctions on ACH for its deficient discovery responses and conduct. Fed. R. Civ. P. 37(a)(5)(C) provides that when a motion to compel is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Whether to impose sanctions lies within the court's

discretion.[38] The Court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[39]  Although ACH's multiple supplementations of discovery responses have delayed the discovery process and are not a model of efficiency, the Court finds that ACH acted in good faith and that an award of sanctions would be unjust.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Discovery (ECF No. 183) is granted in part and denied in part.  If ACH still has not supplemented its answer to Interrogatory 4, it shall do so **within ten (10) days of this Order**.  If ACH has not fully answered Interrogatories 4 through 15 based solely upon its interrogatory-limit objections, it shall serve supplemental answers to those interrogatories **within ten (10) days of this Order**. ACH shall answer Plaintiffs' Interrogatory 9 and produce documents responsive to Plaintiffs' Requests for Production 5, 6, 11, 12, 20, and 21, all as limited by this Order, **within ten (10) days of this Order.**

**IT IS FURTHER ORDERED** Plaintiffs' request for sanctions and fees is denied.  Each party shall bear its own costs associated with this discovery motion.

**IT IS SO ORDERED.**

Dated this 23rd day of July 2018, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[38] *Moss v. Blue Cross & Blue Shield of Kansas, Inc.*, 241 F.R.D. 683, 699 (D. Kan. 2007).

[39] *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999).